## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT, PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY BOVO, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | Case No.:   21-52 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | **COMPLAINT** |
| *Defendant.* | : | |
| | : | |
| | : | |

Filed on behalf of Plaintiff:
ANTHONY BOVO

Counsel of Record for this Party:

**The Law Firm of Fenters Ward**

Joshua P. Ward
Pa. I.D. No.: 320347

J.P. Ward & Associates, LLC
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
personalinjury@fentersward.com

Telephone No.:          412 – 545 – 3016
Fax no.:                      412 – 540 – 3399
Email: jward@fentersward.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT, PENNSYLVANIA**

ANTHONY BOVO,                               :
                                            :
                    *Plaintiff,*            :
                                            :     Case No.:
            v.                              :
                                            :
UNITED STATES OF AMERICA,                   :
                                            :
                    *Defendant.*            :
                                            :
                                            :

**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

Plaintiff, Anthony J. Bovo, Sr. ("Bovo") through the undersigned counsel J.P. Ward & Associates, LLC, d/b/a The Law Firm of Fenters Ward and, specifically, Joshua P. Ward, Esquire now files the complaint against the Defendant, United States of America, averring the following:

**INTRODUCTION**

1.      This is an action against the Defendant United States of America under the Federal Tort Claims Act, (28 U.S. C. §2671, *et seq.*) and 28 U.S.C. §1346(b), for negligence and professional malpractice in connection with medical care provided to Plaintiff Bovo by the Department of Veterans Affairs at the Pittsburgh Veterans Affairs Medical Center.

2.      The claims herein are brought against the Defendant pursuant to the Federal Tort Claims Act (28 U.S. C. §2671, *et seq.*) and 28 U.S.C. §1346(b), for money damages as compensation for personal injuries caused by the Defendant's negligence.

3.      Plaintiff Bovo has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act. *Standard form 95 attached as Exhibit 1.*

2

4.      This suit has been timely filed in that Plaintiff Bovo timely served notice of his clam on the Department of Veterans Affairs less than two years after the incident forming the basis of this suit.

5.      Plaintiff Bovo is now filing this Complaint pursuant to 28 U.S.C. § 2401 after receiving the Department of Veterans Affairs' July 29, 2020 notice of "final denial of administrative claim" *Administrative tort claims denial letter attached at Exhibit 2.*

## PARTIES, JURISDICTION AND VENUE

6.      Plaintiff Bovo is a veteran of the United States Armed Forces and is a Pennsylvania citizen residing at 411 Shadyside Street New Castle, Pennsylvania 16101.

7.      Defendant United States of America, through its agency, the Department of Veterans Affairs owned, operated, possessed, and maintained the H. John Heinz III Veterans Affairs Medical Center located at 1010 Delafield Road Pittsburgh, Pennsylvania 15240-1005, and through physicians, nurses and other healthcare personnel, provided medical treatment to Plaintiff Bovo and other members of the public that are veterans of the United States Armed Forces. Plaintiff is asserting a profession negligence claim against Defendant.

8.      Defendant United States of America, including its directors, officers, operators, administrators, employees, agents and staff at the H. John Heinz III Veterans Affairs Medical Center are hereinafter collectively referred to as the "Pittsburgh VA Medical Center."

9.      At all times relevant to this Complaint, the Pittsburgh VA Medical Center held themselves out to the Plaintiff and eligible beneficiaries, as a provider of high quality health care services, with the expertise necessary to maintain the health and safety to patients like the Plaintiff.

10.     At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and staff were employed by and/or acting on behalf of the Defendant.  Furthermore, the Defendant is responsible for the negligent acts of their employees and agents under respondeat superior.

11.     Jurisdiction if proper under 28 U.S.C. §1346(b)(1).

12.     Venue is proper under 28 U.S.C. §1402(b) in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the Western District of Pennsylvania.

## FACTUAL ALLEGATIONS

13.     At all times relevant hereto, Defendant The United States of America, was a corporation or other governmental entity, and at all times relevant hereto, owned, operated, possessed, and maintained a general hospital located in Pittsburgh, Allegheny County, Pennsylvania, known as the Pittsburgh VA Medical Center, and, through physicians, nurses and other healthcare personnel, provided medical treatment to Plaintiff Bovo and other members of the public that are veterans of the United States Armed Forces.  Plaintiff is asserting a professional negligence claim against all Defendant.

14.     At all times relevant hereto, Defendant United States owned the property located at 1010 Delafield Road, Pittsburgh, Pennsylvania 15240-1005 on which the VA operated.

15.      At all times relevant hereto, Defendant United States understood that is liable for the actions undertaken by the VA and its employees, agents and/or servants.

16.     At all times relevant hereto, Dr. Ramanathan as a licensed doctor performingmedical procedures as a representative of the VA who performs surgeries and procedures on the VA's premises is within the liability of Defendant United States.

4

17.     Furthermore, and at all times relevant hereto, Defendants the United States and VA knew and understood that any and all actions undertaken by Dr. Ramanathan while he was performing duties within the scope of his employment, agency, ostensible agency, and/or contractual relationship at the VA was within its liability.

18.     At all times relevant hereto, 1010 Delafield Road, Pittsburgh, Pennsylvania 15240-1005 is the location where all of the events alleged in this action occurred.

19.     At all times relevant hereto, Defendant the United States and the VA had a duty to ensure that it did not employee or otherwise associate with any individual who presented a reasonable indication of causing harm to others specifically those that were invited onto the premises where it conducts its business especially through the medical services rendered by its doctors and/or surgeons.

20.     At all times relevant hereto, Defendant United States had a duty to ensure that its doctors and/or surgeons, employees, agents, ostensible agents, and/or other servants, provided proper and due care to patients such that the care falls into the standard of care to which patients are entitled.

21.     Furthermore, and at all times relevant hereto, Defendant United States was responsible for maintaining a safe and welcoming medical facility that provides patients with the required standard of care.

22.     At all times relevant hereto, the desired standard of care requires that all procedures and surgeries performed by the employees, agents, ostensible agents, and/or servants of Defendant United States meet the industry and legal standards and requirements that ensure and otherwise provide patients with safe and proper medical treatment.

23.     As such and at all times relevant hereto, Dr. Ramanathan, as a licensed surgeon

and doctor was required to meet the industry and legal standards and requirements for procedures, surgeries and general care of patients while performing procedures and/or surgeries on patients.

24.     On or about June 18, 2019, Dr. Ramanathan, while working on behalf of Defendant United States, performed a surgery and/or procedure and/or operation upon Plaintiff Bovo. This procedure was a robotic assisted laparoscopic conversion of vertical banded gastroplasty (hereinafter "VBG") to antecolic-antegastric gastric bypass with omental flap to cover multiple "swiss cheese" abdominal wall hernia defects.

25.     When this procedure occurred, Dr. Ramanathan had been treating Plaintiff Bovo for a significant period of time.

26.     At the time of this procedure, Plaintiff Bovo had previous VBG procedures which caused him to present symptoms of gastroesophageal reflux disease (hereinafter "GERD"), emesis and weight loss in addition to having food retained in his gastric pouch.

27.     As a direct result of those findings, Mr. Bovo was offered a reversion to his gastric bypass, which procedure is the subject of this action, and which occurred on June 18, 2019.

28.     During the surgical procedure, Dr. Ramathan made the decision to utilize a section of the omental flap, secured by four sutures, to repair a complex surgical hernia in Mr. Bovo's fascia tissue(s).

29.     Immediately following the June 18, 2019 procedure, Dr. Ramanathan expressed concern over the hernias in his operative note stating "since this was a contaminated procedure with opening in to the intestinal lumen, I did not want to place the prosthetic mesh to repair the incisional hernia.  However, I was worried that if I did not close the defect that small bowel may herniate and get incarcerated causing small bowel obstruction.  Hence I decided to use the omental flap as a biological mesh."

30.     As detailed *infra*, the approach chosen to address the incisional hernia was to create an omental flap.  This approach is not an acceptable treatment for such hernia defects. Omentum is not a satisfactory barrier to prevent herniation of the bowel for many reasons, including, but not limited to: inadequate strength to prevent bowel herniation; risk of herniating itself and being followed by the bowel.  The appropriate standard of care for addressing hernia defects requires either closure of the defects, bridging with mesh and significant overlap and fixation, or both. The concern over mesh infection should have been addressed by using one of many absorbable or purpose designed 'biologic' mesh products readily available at the VA and/or surrounding medical community. In other words, the use of omentum was almost sure to result in bowel herniation, thereby incarcerating the bowel, and leading to necrosis and perforation of the bowel.

31.     On or about June 24, 2019, Mr. Bovo was discharged from the VA.

32.     On or about July 2, 2019, Mr. Bovo returned to the VA's emergency room (hereinafter "ER") due to complaints of persistent nausea and vomiting that occurred since the June 18, 2019 surgery. All of the aforementioned symptoms were indicative of an incarcerated hernia.

33.     At the time of his admittance, neither Dr. Ramanathan nor any other personnel of Defendant United States ordered or performed an abdominal imaging study on Mr. Bovo.

34.      Dr. Ramanathan admitted and diagnosed Mr. Bovo for "dehydration."

35.     On or about July 3, 2019, Mr. Bovo was noted to have 'felt better' and was discharged from the hospital.

36.     Two days later on or about July 5, 2019, Mr. Bovo again returned to and was admitted into VA hospital with persistent nausea, vomiting and inability to eat or drink.  Again, these symptoms were indicative of an incarcerated bowel within the incisional hernia.

7

37.     During this admittance, Mr. Bovo was found to be hypotensive, tachycardic with the appearance of dehydration. Mr. Bovo also was noted to have shortness of breath and a cough.

38.     Once again, none of the employees, agents, ostensible agents, and/or servants of Defendant, the United States and VA, performed any abdominal imaging prior to the decision to admit Mr. Bovo.

39.     During the early hours of the morning, on or about July 6, 2019, Mr. Bovo became tachycardic and persistently hypotensive despite being treated with IV fluid boluses up to 4 liters.

40.     These symptoms led to concern for the intra-abdominal septic process.

41.     As a result of these findings, a CT scan was finally performed, with the express purpose of ruling out a bowel herniation and/or perforation.

42.     That CT scan led to a diagnosis of an incarcerated small bowel within the incisional hernia with obstruction and possible perforation.

43.     Following this diagnosis, Mr. Bovo was taken to the operating room where Dr. Ramanathan performed a laparoscopy, laparotomy, reduction of incarcerated ventral hernia, repair of pinpoint perforation in roux limb x2, placement of feeding jejunostomy in BP limb, and placement of JP drains.

44.     During the emergency laparotomy, it was confirmed that the incarcerated hernia had caused two perforations of the bowel, causing the contents of Mr. Bovo's small intestine to pour into his abdominal cavity.

45.     After the emergency procedure, Mr. Bovo developed a severe infection (sepsis), and enterocutaneous fistula to his midline wound and was therefore hospitalized for three weeks before being discharged on or about July 27, 2019.

46.     Following his discharge from the Pittsburgh VA Medical Center, Mr. Bovo was transferred to the VA Hospital HJ Heinz Campus in Aspinwall, Pennsylvania where he was admitted from July 27, 2019 to September 10, 2019 for long-term care.

47.     During this long-term admission, Mr. Bovo was regularly monitored due to his enterocutaneous fistula and the JP drain on the left side of his abdomen placed during the emergency surgery in June was removed.

48.     On or about October 15, 2019, Mr. Bovo returned to the Pittsburgh VA Medical Center for an outpatient to have the JP drain on the right side of his abdomen removed

49.     Mr. Bovo endured extreme pain, suffering, discomfort and mental anguish as the fistula remained open and the infection persisted for several months.

50.     As a further complication, on or about April 1, 2020, Mr. Bovo presented with abdominal pain, and was diagnosed with a "multiple ventral hernias" related to the original surgery.

51.     This time, Mr. Bovo refused to be treated by Dr. Ramanathan.

52.     On April 7, 2020, Dr. Pablo Giusppucci of UPMC Jameson, performed a robotic hernia repair procedure utilizing biological mesh to rectify the improper 'omentum technique' used by Dr. Ramanathan on or about June 18, 2020.

53.     The negligence, recklessness and/or carelessness described in this Complaint was the sole proximate, factual and/or substantial cause of Mr. Bovo's injuries, increased risk of injury, increased risk of death, pain and suffering and/or extreme burdens as a result of an untreated and/or inappropriately rendered revision to his gastric bypass.

54.     The utilization of omental flaps in a novel way, rather than conducting a mesh repairment procedure, or other generally accepted method, was the direct result of the decisions

and actions undertaken by Dr. Ramanathan while he was acting within his actual/ostensible agency of Defendant United States.

55.     Moreover, Dr. Ramathan failed to consider or appropriately evaluate for bowel herniation when Mr. Bovo presented to the ER on July 2, 2019.  Appropriate evaluation required imaging, ideally with a CT scan to evaluate for acute bowel herniation indicating a need for operation.  Had a CT scan been done on July 2, 2019, it is highly likely that the herniated loop of bowel would have been seen.

56.     Making this diagnosis would have almost certainly led to operation with laparoscopic reduction of the bowel preventing eventual necrosis and perforation. As a consequence of this failure to diagnose and treat herniated bowel on July 2, 2019, Mr. Bovo progressed to bowel perforation greatly increasing the chances of sepsis and fistula that developed.

57.     When again on July 5, 2019, Mr. Bovo presented to the ER with complaints of persistent nausea and vomiting and this time had hypotension and tachycardia Dr. Ramanathan was obligated to have a high index of suspicion for bowel herniation. Again, he deviated from acceptable standards of care when he failed to appropriately diagnose and timely intervene instead allowing Mr. Bovo to be admitted to the medical service. The CT scan was not performed until the next day, July 6, 2019, when Mr. Bovo displayed persistent tachycardia and hypotension despite 4 liters of fluid resuscitation. This additional delay despite signs consistent with bowel obstruction and strangulation or perforation was a further deviation from standards of care.

58.     Once the diagnosis was finally made Dr. Ramanathan appropriately took Mr. Bovo to theoperating room where he required open laparotomy to reduce the bowel and repair the two perforations. These perforations the sepsis and likely the need for open surgery as well as

development of an enterocutaneous fistula would have been avoided with earlier diagnosis and treatment.

59.     Although a fistula is a recognized complication after repair of a bowel perforation it is obvious that treatment prior to the development of perforation would have avoided the fistula. Early diagnosis and intervention would have likely allowed the pathology to be dealt with via laparoscopic rather than open surgery, and not only the fistula, but the extensive wound care, hospitalization and rehabilitation time needed would have been avoided.

60.      Regardless, if on June 18, 2019 Dr. Ramanathan had decided to conduct a mesh repairment of the surgical hernia without significant error, Mr. Bovo would not have suffered his post-surgery injuries, hernia, perforation, sepsis and fistula issues, which would have thereby prevented him from enduring unnecessary pain, suffering, injuries, mental and emotional distress, medical bills, embarrassment, humiliation, tingling and numbness in the areas above his genitals and any and all other costs, ailments, conditions and unnecessary burdens that he has and continues to endure.

61.     As a direct and proximate result of the aforementioned acts and omissions, Mr. Bovo has suffered the following damages:

a.     Pain, suffering and inconvenience in the past, present and future;

b.     Loss of the ability to enjoy pleasures in the past, present and future;

c.     Emotional distress and mental anguish in the past, present and future;

d.     Embarrassment and humiliation in the past, present and future;

e.     Tingling and numbness in the areas above his genitals in the past, present and future;

f.     Increase risk of harm, injury, complication, including death, in the past, present and future;

g.     Past, present and future medical expenses and all other expenses reasonably related.

62.     Some or all of the injuries and damages suffered by Mr. Bovo are or may become permanent in nature.

## CAUSE OF ACTION

## COUNT I – MEDICAL MALPRACTICE

63.     Each of the above paragraphs is incorporated herein by reference as though the same facts were fully set-forth herein at length.

64.     At all times relevant hereto, Dr. Ramanathan as a practicing doctor, physician and/or surgeon, employee, agent, ostensible agent, and/or servant, for Defendant United States had a duty to provide patients with healthcare that is within the accepted standard of care within the medical and scientific community.

65.     At all times relevant hereto, Defendant United States understood these duties held by Dr. Ramanathan and operated as if Dr. Ramanathan was undertaking these responsibilities on its behalf.

66.     At all times relevant hereto, Defendant United States by and through the VA held itself out to the public as a medical care provider for any and all veterans of the United States Armed Forces all of which classify as individuals in the general public.

67.     Defendant United States and VA, by and through its employees, agents, ostensible agents, and servants, were negligence and carless in some or all of the following particulars:

   a.   prescribing, recommending, ordering, administering, and/or causing others to prescribe, recommend, order, and/or administer medications and/or treatments that were not appropriately recognized within the medical community, that only served to further complicate Mr. Bovo's evolving gastrointestinal condition(s),

12

rather than timely diagnosing and appropriately treating Mr. Bovo's bowel herniations or perforations;

b.  prescribing, recommending, ordering, administering, and/or causing others to prescribe, recommend, order, and/or administer procedures that were contra-indicated;

c.  failing to prescribe, recommend, order, administer, and/or cause others to prescribe, recommend, order and/or administer medications, treatments and/or procedures, that were indicated;

d.  prescribing, recommending, ordering, administering, and/or causing others to prescribe, recommend, order and/or administer the use of the 'omental flap and four suture' method for closing a surgical hernia;

e.  failure to make available and/or communicate the availability of biological mesh products which could and should have been used during the June 18, 2019 procedure;

f.  failure to make available and/or communicate the availability of other generally accepted methods for closing a surgical hernia;

g.  failure to recognize and/or communicate that Dr. Ramathan's surgical use of the omentum on June 18, 2019, was never going to successfully treat Mr. Bovo, as even if the omentum was successful, the procedure was still insufficient to the use of only four sutures;

h.  failure to notate, communicate, and/or cause others to communicate that Mr. Bovo was at high risk for complications, herniation and/or perforation of his bowel following the June 18, 2019 surgery;

13

Case 2:20-cv-00025-JDW Document 401 Filed 01/12/21 Page 14 of 16

i.   failing to consider, evaluate, and/or diagnose a bowel herniation when Mr. Bovo presented to the E.R. on July 2, 2019;

j.   failure to perform a CT scan on July 2, 2019, which would have likely shown a 'herniated loop' of bowel, and lead to a diagnosis and operation with laparoscopic reduction of the bowel, thereby preventing eventual necrosis and perforation;

k.   failing to consider, evaluate, and/or diagnose a bowel herniation or perforation when Mr. Bovo again presented to the E.R. on July 5, 2019;

l.   failure to perform a CT scan on July 5, 2019, which delay, despite signs consistent with bowel obstruction, strangulation and/or perforation, and served to further complicate Mr. Bovo's serious condition;

m.  failing to timely prescribe, recommend, order, perform and/or cause to be prescribed, recommended, ordered, and/or performed, the appropriate treatments, procedures, interventions, remedies, therapies, medications, and/or measures to timely and appropriately diagnose and treat Mr. Bovo's bowel issue;

n.   failing to learn of and/or timely learn of and/or adequately consider and/or appropriate follow up on Mr. Bovo's recent history of bowel surgery, symptoms of dehydration, nausea and vomiting, tachycardia, lab and/or blood work, and/or the results of reports, and/or failing to cause others to do so;

o.   unnecessarily delaying and/or causing others to unnecessarily delay the diagnosis and/or proper treatment of Mr. Bovo's bowel obstruction, and/or herniation, and/or perforation;

14

p.  allowing Mr. Bovo's condition to deteriorate and get worse and/or failing to prevent Mr. Bovo's condition from deteriorating and getting worse;

q.  failing to interpret and/or appropriately follow up on the reports and findings of hospital staff;

r.  causing Mr. Bovo's bowel to herniate and/or perforate, and/or failing to prevent Mr. Bovo's bowel from herniating and/or perforating.

68.  In summary the inappropriate method—utilizing a flap of omentum and four sutures to repair incisional hernia defects—employed by Dr. Ramathan at the initial operation led to an increased risk of acute bowel herniation and perforation. This deviation from accepted standards of care was compounded by the next deviation, which was failure to maintain a high index of suspicion and evaluate for bowel herniation and led to recurrent delays in diagnosis and treatment. These recurrent delays in diagnosis and treatment directly resulted in Mr. Bovo developing an incarcerated bowel, necrosis, bowel perforation, and sepsis, leading to open surgery and enterocutaneous fistula. The open surgery and fistula directly led to the need for extensive wound care, hospitalization, and rehabilitation that would have been avoided. Further, early diagnosis would have afforded the opportunity for definitive hernia repair with mesh at the second operation thus avoiding the need for another operation to repair the twice recurrent hernia that predictably developed after the open surgery for the bowel perforation.

69.  As a direct and proximate result of the aforementioned acts and/or omissions, Mr. Bovo has suffered the following damages:

s.  Immense pain, suffering and inconvenience in the past, present and future;

t.  Loss of the ability to enjoy pleasures in the past, present and future;

u.  Emotional distress and mental anguish in the past, present and future;

     v.      Embarrassment and humiliation in the past, present and future;

     w.     Tingling and numbness in the areas above his genitals in the past, present and future;

     x.     Increase risk of harm, injury, complication, including death, in the past, present and future;

     y.     Past, present and future medical expenses and all other expenses reasonably related.

70.     Some or all of the injuries and damages suffered by Mr. Bovo are or may become permanent in nature.

     **WHEREFORE**, in consideration of the foregoing, Mr. Bovo, demands that judgment be entered in his favor and against Defendant United States of America in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000), exclusive of interest and costs of suit and punitive damages.

**PLAINTIFF RESPECTFULLY DEMANDS A JURY ON ALL MATTERS SO TRIABLE.**

                             Respectfully submitted,

                             **THE LAW FIRM OF FENTERS WARD**

Date: January 12, 2021           By: _____
                             Joshua P. Ward (Pa. I.D. No. 320347)
                             Kyle H. Steenland (Pa. I.D. No. 327786)

                             J.P. Ward & Associates, LLC
                             The Rubicon Building
                             201 South Highland Avenue, Suite 201
                             Pittsburgh, PA 15206

                             Counsel for Plaintiff